UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DE'VON L. WALKER,

        Plaintiff,

        v.         Case No. 22-cv-0244-bhl

WISCONSIN DEPARTMENT OF HEALTH SERVICES,
WISCONSIN RESOURCE CENTER,
SUZANNE DEHAAN,
RENEE OPPERMAN,
THERESA BARWELL,
JOHNSON, and
JOHN DOES,

        Defendants.

## SCREENING ORDER

Plaintiff De'Von Walker, who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On May 9, 2022, the Court gave Walker an opportunity to file an amended complaint, which he did on June 2, 2022. The Court will screen the amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

As the Court previously explained, it has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state

a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## ALLEGATIONS OF THE AMENDED COMPLAINT

Walker asserts that, beginning in the spring of 2019 until November 2021, Defendant Renee Opperman, a prison staff member who worked in the kitchen and supervised Walker, sexually assaulted him. Walker explains that Opperman used her position to isolate him and force him to commit sexual acts. He asserts that she groped him, kissed him, forced him to have contact with her body, and showed her breasts to him. Walker estimates that she sexually assaulted him at least fifty times. He believes that his version of events can be corroborated by video evidence. Dkt. No. 10 at 3-4.

Walker states that in June or July 2019, Defendant Captain Johnson and a John Doe Officer used false pretenses to secure his participation in an interview about Opperman's alleged misconduct. Walker explains that he refused to talk to Johnson. According to Walker, Johnson had previously falsely accused him of soliciting an officer, so Walker did not trust him. Walker asked to talk to someone else, but his request was denied, and no one followed up with him. Walker asserts that Johnson and the John Doe Officer knew Opperman was sexually assaulting him because during the attempted interview they referenced video footage showing Opperman following Walker into a storage closet where she groped and kissed him. Walker believes that Defendant Suzanne Dehaan, who approved the result of Johnson's investigation, also knew about the video. According to Walker, Opperman was allowed to continue abusing him for two more years, even after receiving verbal and written reprimands from her supervisors. Dkt. No. 10 at 5-7, 9.

Walker explains that in the fall of 2021, he was placed in the restrictive housing unit without being told why. He was also strip searched and given a urinalysis. He knew only that

Defendant Theresa Barwell was responsible for him being placed in segregation. Five days later, he was transferred to another institution. According to Walker, when he first arrived at his new institution, there was some confusion over whether he should be placed in segregation or general population. He explains that he was placed in segregation, then released because no one could explain why he was in segregation. Walker explains he eventually received a conduct report for use of intoxicants, but this was ultimately dismissed. Dkt. No. 10 at 11-13.

About a month later, in November 2021, Barwell and a John Doe Officer interviewed Walker about Opperman's alleged misconduct. Walker asserts he told them that he did not want to talk to them. He explains that he answered questions only by telling them that they did not know what they were talking about. Walker asserts that the John Doe Officer accused him of having no integrity, and Barwell threatened him with a conduct report. Walker concedes that he lied during the interview by "spin[ning] a narrative about an ex girlfriend." But he explains that he lied because he did not trust Barwell and the officer "to have [his] best interest at heart [and he] did not trust anything they were saying." Dkt. No. 10 at 14-15.

Three weeks later, Walker allegedly received a conduct report for lying to staff and soliciting staff. Walker states that Barwell used the information she learned in the course of her confidential investigations into Opperman's misconduct as the basis for the conduct report. He asserts that he was in restrictive housing for more than thirty days but was released after the conduct report was dismissed on appeal. Dkt. No. 10 at 15-17.

### THE COURT'S ANALYSIS

To state a claim that Defendants violated his Eighth Amendment rights, Walker must allege that that they acted with deliberate indifference to an excessive risk to his health or safety. *J.K.J. v. Polk County*, 960 F.3d 967, 376 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 837

3

(1994)). "[I]t would be an understatement" to say that sexually assaulting an inmate "objectively imposes[s] serious risk to their safety." *Id.* Accordingly, Walker may proceed on a deliberate indifference claim against Opperman based on his allegations that, over the course of two years, she had repeated sexual contact with him without his consent.

He may also proceed on deliberate indifference claims against Johnson, Dehaan, and the John Doe Officer based on his allegations that they failed to intervene to stop the misconduct. *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (to state a claim based on a failure to intervene, a plaintiff must allege "Defendants (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it"). Walker concedes that he refused to talk to Johnson and the Doe Officer, but he alleges that they and Dehaan knew what Opperman was doing because they had reviewed video footage of her inappropriate interactions with him in the storage closet. Walker will have an opportunity to use discovery to learn the name of the Doe Officer after the named Defendants respond to his amended complaint and the Court sets a deadline for the completion of discovery.

Walker does not, however, state claims against Barwell and the John Doe Officer with whom Barwell interviewed Walker. By the time they contacted Walker about Opperman's conduct, he had been transferred to another institution and no longer was in contact with Opperman. Barwell and the officer cannot be liable for failing to stop conduct that had already ceased to occur by the time they learned about it.

Walker's allegations that he spent up to thirty days in segregation without being told why also fail to state a claim. A prisoner's "liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). Absent allegations of exceptionally harsh conditions (of which there are none here), stays in segregation of less than six months do not

4

trigger due process rights. *Id.* at 743-44 (citations omitted). Walker also does not state a claim against Barwell based on his allegations that she used information she learned during confidential investigations as the basis for the conduct report she wrote him. While the existence of an investigation may be confidential, it does not follow that the results of the investigation will be confidential. The whole point of an investigation is to uncover wrongdoing. In any event, Walker explains that he did not talk to anyone about his interactions with Opperman, so to the extent Barwell revealed information that should have been kept confidential, she did not learn that information from Walker. Walker cannot enforce privacy rights belonging to others. *See Rawoof v. Texor Petroleum Co., Inc.*, (7th Cir. 2008) ("One well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties." (citations omitted)).

Walker also fails to state claims against the Wisconsin Department of Health Services and the Wisconsin Resource Center. It is not clear why Walker names these agencies in the caption of his amended complaint; the body of his amended complaint contains no allegations against them. Regardless, Walker cannot sue either agency, both of which are arms of the state, because states and state agencies are not "persons" for the purpose of §1983 and therefore cannot be sued under the statute. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Finally, the Court observes that Walker asserts that he refused to talk to Johnson about Opperman's alleged misconduct and that no one followed up with him until two years later, at which time he again refused to speak to investigators. Walker's alleged silence raises the question of whether Walker exhausted his available administrative remedies as required by 42 U.S.C. §1997e(a) prior to filing this lawsuit. A failure to exhaust administrative remedies is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 211–12 (2007), so the Court need not resolve that issue now.

But if Walker has not completed the grievance process, his amended complaint may be subject to dismissal. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). As a reminder, a prisoner cannot complete the grievance process while a lawsuit is pending—he must do so *before* he files his lawsuit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (affirming dismissal of lawsuit filed two days before prisoner completed grievance process). If Walker did not exhaust his administrative remedies, he may wish to voluntarily dismiss this action without prejudice so that he can complete the grievance process and comply with § 1997e(a).

**IT IS THEREFORE ORDERED** that Walker's purported claims against the Wisconsin Department of Health Services, the Wisconsin Resource Center, Theresa Barwell, and one of the John Doe Officers are **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Walker's amended complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Suzanne Dehaan, Renee Opperman, and Johnson.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Dehaan, Opperman, and Johnson shall file a responsive pleading to the amended complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that the collection order from the Court's May 9, 2022 screening order (Dkt. No. 9 at 6) is **AMENDED** to reflect that Walker's filing fee balance as of the date of that order was $325.54 (*not* $325.36 as mistakenly stated in the prior order).

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Walker is located.

Dated at Milwaukee, Wisconsin on June 7, 2022.

                                        s/ *Brett H. Ludwig*
                                        BRETT H. LUDWIG
                                        United States District Judge